UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARION HAHN                                                                                           Plaintiff

v.                                                                             Civil Action No. 3:24-cv-280-RGJ

STATE FARM FIRE AND CASUALTY                                                                          Defendant
COMPANY

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Marion Hahn ("Hahn") moves for leave to file an amended complaint. [DE 13]. Defendant State Farm Fire and Casualty Company ("State Farm") responded [DE 15] and Hahn replied [DE 19]. This matter is ripe. For the reasons below Hahn's Motion to Amend [DE 13] is **GRANTED**.

**I.    BACKGROUND**

On April 1, 2023, fire damaged Hahn's residence at 12212 Old Henry Road Louisville, KY 40223, which prompted Hahn to file a claim with her home insurer, State Farm. [DE 1-2 at 5-6]. Hahn owned a homeowner's insurance policy issued by State Farm, which covered "accidental direct physical loss to the property from fire, which entitled [Hahn] to the value of the contents in her house" and "[Hahn's] 'Additional Living Expense' for up to 24 months[.]" [*Id*. at 6]. To help assess the claim, Hahn "retained Public Adjuster Richard Michelson" ("Michelson") [*Id*.]. And Hahn used Orange Restoration "to repair the property damage." [*Id*.]. According to Hahn, she has still not received all payments from her claim regarding the fire. [*Id*.].

Hahn alleges that on September 28, 2023, "State Farm had both acknowledged its liability and produced an estimate of their coverage, however their coverage was not based on their duties under the contract." [*Id*.]. She asserts that "[t]he offer did not fully cover the loss of the contents

1

of [her] home, [and its] repair[.] Nor did it fully compensate for her additional living expenses (ALEs)." [*Id*.]. On November 13, 2023, State Farm issued a check to Hahn for $8,428.34. [*Id*.].

State Farm had their adjuster, Brian O'Loughlin ("O'Loughlin") assess Hahn's damage. On December 27, 2023, "adjuster O'Loughlin sent a 70 page document as well as a 'summary of loss' document to Ms. Hahn detailing a total offer of $656,122.38 to compensate for the damage to the dwelling, the damage to personal property, and the loss of use of the home." [*Id*. at 7]. "After a full review of the details, on January 9, 2024, [ ] Hahn [ ] had informed State Farm that their offer did not compensate for the costs incurred in the restoration of damaged property, which was a substantial cost." [*Id*.]. The next day "Orange Restoration provided a 38-page document that estimated its bill for the restoration of property at $99,223.34. Orange Restoration stated that it had sent State Farm this information on December 20, 2023, a week before State Farm sent its summary of loss, that did not include this data. On January 24, Orange revised that figure to $92,973.35." [*Id*.].

On January 29, 2024, Orange Restoration wrote to all parties that it had stopped work on the restoration due to not being paid. [*Id*.]. On the next day, O'Loughlin sent Michelson an email saying "Can you work with Orange Construction to get the entire estimate? They said they have 2 pending pods for cleaning and seeking to get paid. My supervisor requesting [sic] to see entire estimate before we can evaluate Orange claim [sic]. Also, I need you to confirm all the items and cleaning too. The estimate is over 90K at the moment." [*Id*. 7-8]. Michelson then responded in writing, reminding O'Loughlin that the numbers had already been supplied, and added, "Contents cleaning attached. This is Orange's estimate and revised estimate/billing. You can quiz them directly Brian, with questions. Or . . . we can have a going call [sic] to chat with them. Please get them paid for what they have completed." [*Id*. at 8].

2

On January 31, 2024, O'Loughlin responded, saying "State Farm management is not looking for partial estimate for cleaning of contents. They are seeking entire cleaning estimate. Also, I need you to confirm the contents items and send to S[tate ]F[arm] for review. Some of the mitigation is structure and need to separate." [*Id*.]. Michelson then replied, saying "You've got to pay Orange for charges to date." [*Id*.]. According to Hahn, "O'Loughlin retorted, 'They are seeking entire estimate. The had [sic] personal contents for 8 months. My supervisor is requesting what is pending.'" [*Id*.].

On February 8, 2024, Orange followed up, and reiterated its estimate, and reminding the parties that "it had stopped work because it had not been paid." [*Id*.]. "By February 21, when Michelson sent the final estimate from Orange to State Farm, he wrote that [ ] Hahn disagreed with State Farm's estimates as to the property damage claim, which included payment to Orange." [*Id*.]. Because State Farm's contract limited the deadline to filing a legal claim to one year, Michelson wrote to O'Loughlin on February 21, 2024 "asking to toll the deadline in order to adjudicate this matter without filing a lawsuit." [*Id*.]. In response, O'Loughlin stated that he was "waiting on approval[,]" and "should hear something soon." [*Id*. at 9].

According to Hahn, Michelson "continued sending estimates and asking for updates[,]" and O'Loughlin next responded on February 26, 2024, "claiming he could not read the documents Michelson tendered, and asked for them in '.pdf' format[,]" even though that was how Michelson allegedly previously had sent them.

"On March 5, Michelson wrote, regarding O'Loughlin's Feb. 21 response that he was 'waiting on approval,' to resolve this matter, stating, 'It's been almost 2 weeks since our last conversation. Could you please update us on this matter, Were there any changes regarding payment status?'" [*Id*.]. And by March 19, 2024, Michelson "had repeatedly reminded O'Loughlin

3

of the looming deadline, and that Hahn would have to file suit if State Farm did not resolve this claim equitably and immediately." [*Id*.].

On March 25, 2024, Michelson allegedly sent O'Loughlin Hahn's total demand again, which included the payments due to Orange and payments for additional living expenses. [*Id*.]. "Once again, O'Loughlin claimed he could not read or open the file, which had been sent as a '.pdf' file, and again requested it be sent in .pdf format, even though it already had been." [*Id*.]. After this communication, Hahn asserts that no further communication came from O'Loughlin or State Farm. [*Id*.]. However, State Farm issued a second unexplained check of unknown amount to Hahn "that does not fully compensate for her losses." [*Id*.].

Hahn then filed suit in Jefferson Circuit Court on March 29, 2024. [DE 1-2 (the "Original Complaint"]. Hahn brings three claims against State Farm: (1) a declaration of rights pursuant to KRS § 418, (2) a claim for breach of contract, and (3) a claim for bad faith under the unfair claims and settlement practice act. [*Id*.]. State Farm timely removed this case to Federal Court on May 8, 2024. [DE 1]. The deadline to amend the pleadings passed on November 15, 2024. [DE 13 at 56].

On November 27, 2024, Orange sued Hahn in Jefferson Circuit Court[1] to recoup the balance owed for its repair services. [*Id.* at 57]. During discovery in that matter, Orange disclosed "emails [between Orange and] State Farm from March 22, 2024 (one week prior to Hahn filing suit), to July 15, 2024." [*Id.*] Hahn now moves to amend her Original Complaint based on these later disclosed communications.

---

[1] Case No. 24-CI-401155

4

## II. DISCUSSION

### A. Motion to Amend

Hahn moves to amend her Original Complaint, "to add two additional parties, Brian O'Loughlin and Wesley Savage, assert an additional claim for tortious interference with a contract against them, and supplement the existing allegations against State Farm for Unfair Claims Settlement Practices/Bad Faith." [DE 13 at 58. *See* DE 13-1 (the "Amended Complaint")]. Both O'Loughlin and Savage work for State Farm and were points of contact for Hahn for her home insurance claim. Hahn alleges that that O'Loughlin and Savage, "together or separately," intentionally caused Hahn to breach her contract with Orange and caused State farm to breach its contract with Hahn. [DE 13-1 at 69]. Hahn argues that amendment should be allowed "due to newly discovered evidence." [*Id*. at 56]:

> During discovery in the state court matter, counsel for Orange disclosed emails between Orange and State Farm revealing critical facts previously unknown to Marion and her counsel. Orange sent four emails to State Farm from March 22, 2024 (one week prior to Hahn filing suit), to July 15, 2024, requesting the balance of payment. Brian O'Loughlin, a State Farm adjuster, failed to respond to a single email and instead, forwarded Orange's July 15, 2024 email request to State Farm adjuster Wesley Savage. Wesley Savage replied, "this claim is currently in litigation, and we have paid your invoice totaling invoice $92,973.95 to our named insured, Marion Hahn, with Orange Construction also on the payment. You will need to contact Ms. Hahn for payment." Wesley Savage ignored all further communication from Orange.

[DE 13 at 57]. Hahn asserts that she did not find out this information until February 27, 2025, from Orange, who filed suit against her on November 27, 2024. Moreover, she asserts that this information was not provided to her, despite her May 8, 2024, discovery requests, where she specifically sought: "All statements given by a party, oral or written, or court reported, signed or unsigned, to some person or entity other than his/her attorney related to or regarding any issue in Plaintiff's Complaint, and all correspondence with any third-party regarding or related to

5

Plaintiff's claim." [*Id.*]. Therefore, she argues, that State Farm failed to disclose these emails, depriving her and her counsel the opportunity to timely amend her Original Complaint.

State Farm opposes amendment on the basis that (1) no additional facts have been presented warranting a new cause of action, and (2) amending the current pleading and changing the scheduling order will prejudice State Farm. [DE 15 at 92–96].

      i.    <u>Amending after the Deadline in the Scheduling Order</u>

Hahn moves to amend after the deadline "due to newly discover[ed] evidence[,] nearly 5 months after the after the deadline to amend the complaint set forth in the Court's scheduling order." [DE 13 at 56]. In response, State Farm asserts that Hahn has failed to establish "sufficient good cause to modify the order under [Rule 16(b)(4).]" [DE 15 at 93–94]. State Farm contends that "Hahn was aware that State Farm was paying the bills submitted by [Orange Restoration] which in turn require the bills to be sent to State Farm." [*Id.* at 94]. However, in reply, Hahn asserts that the documents disclose something else—that "proposed Defendants Brian O'Loughlin and Wesley Savage, State Farm employees, colluded in writing with Orange Restoration to compel Orange to file suit against [Hahn]." [DE 19 at 108].

When the deadline established by the court's scheduling order has passed, "a plaintiff first must show good cause under Rule 16(b) . . . for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation and citations omitted). "[C]ourts may also

consider prejudice to the nonmoving party. But the Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then to ascertain if there are any additional reasons to deny the motion." *Mercer v. Wal-Mart Stores E., Ltd. P'ship*, No. 4:23-CV-00119-RGJ-HBB, 2024 WL 2806192, at *1 (W.D. Ky. May 31, 2024) (quotations omitted) (citing *Smith v. Holston Med. Grp.*, P.C., 595 F. App'x 474, 479 (6th Cir. 2014)); *see also Carroll v. Young*, No. 1:19-CV-00153-GNS-HBB, 2022 WL 14151977, at *4 (W.D. Ky. Oct. 24, 2022) ("[A] movant who fails to show he acted diligently will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice as a result of the modification of the scheduling order." (citations omitted)). The burden of showing good cause rests with the moving party. *See E.E.O.C. v. Taco Bell Corp.*, 575 F. Supp. 2d 884, 889 (W.D. Tenn. 2008).

To show good cause, a moving party can demonstrate that he or she diligently attempted to meet the original deadline. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). There are five factors to consider: (1) when the moving party learned of the issue that is the subject of discovery; (2) how the newly discovered evidence is necessary and material; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) "whether the adverse party was responsive to . . . discovery requests." *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). The central question among these factors is whether a party acted diligently. *Dowling*, 593 F.3d at 478.3

1. *When Hahn learned of the issue that is the subject of discovery.*

Although Hahn was aware that Orange was in communication with O'Loughlin and Savage prior to the deadline passing, Hahn was not aware that Savage sent an email to Orange stating "this

7

claim is currently in litigation, and we have paid your invoice totaling invoice $92,973.95 to our named insured, Marion Hahn, with Orange Construction also on the payment. You will need to contact Ms. Hahn for payment." [DE 13 at 57]. In fact, Hahn asserts that she did not learn of this communication until February 27, 2025, when the information was disclosed by Orange in another court proceeding. [*Id.*]. And within a week of learning of the communication, Hahn filed a motion to amend the Original Complaint by adding two additional parties, Brian O'Loughlin, and Wesley Savage, and asserting an additional claim for tortious interference with a contract against them. [DE 13 at 58]. Thus, the first factor favors allowing Hahn to file after the deadline. *See Bentkowski*, 637 F.3d at 696.

2. *How the discovery would affect the ruling below.*

"This is a *Dowling* factor routinely noted in opinions but to which significant analysis is rarely afforded, as it is not related to the primary question of a party's diligence." *Mercer*, 2024 WL 2806192, at *3. "Rather . . . it appears to be an equitable component of the analysis intended to weed-out irrelevant or marginally relevant additional desired discovery." *7D Holdings, LLC v. JAWK Holdings LLC*, No. 1:24-CV-00033-GNS-HBB, 2025 WL 624534, at *2 (W.D. Ky. Feb. 26, 2025) (cleaned up). In this case, Hahn is not asking for an extension on discovery, but instead to file a motion to amend outside of the permitted scheduling window. And if Hahn is not permitted to file her motion to amend, this ruling would have an impact on the claims she can bring and the parties she can bring claims against. Accordingly, this factor weighs in Hahn's favor.

3. *Length of the discovery period.*

The scheduling order was entered on August 2, 2024, which gave Hahn four months to file a motion to amend or join additional parties. [DE 10 at 45]. However, because Hahn is not asking for an extension on discovery, but instead to file a motion to amend outside of the permitted

scheduling window, and she made a proper discovery request within the proscribed period, this factor favors good cause or is at least neutral.

*4. Whether Hahn was dilatory.*

The "good cause" standard "primarily considers the diligence of the party seeking the amendment. In other words, to demonstrate 'good cause' a party must show that despite their diligence the timetable could not reasonably have been met." *Woodcock v. Kentucky Dept. of Corr.*, No. 5:12-CV-00135-GNS-LLK, 2016 WL 3676768, at *2 (W.D. Ky. July 6, 2016) (quoting *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)). Here, Hahn discovered this email in Orange's lawsuit against Hahn on February 27, 2025, and filed a motion to amend seven days later. [DE 13 at 57]. Thus, there is no evidence that Hahn was dilatory. In fact, Hahn attempted to find this communication earlier in the discovery process, but State Farm failed to provide the relevant email in question. Although State Farm produced "emails between State Farm and Orange regarding billing" on November 7, 2024, these emails were not included in State Farm's production. [DE 15 at 92]. This factor weighs in favor of finding good cause.

*5. Whether State Farm was responsive.*

Likewise, the fifth factor favors good cause because State Farm did not disclose the relevant email, even when Hahn sought: "All statements given by a party, oral or written, or court reported, signed or unsigned, to some person or entity other than his/her attorney related to or regarding any issue in Plaintiff's Complaint, and all correspondence with any third-party regarding or related to Plaintiff's claim[,]" in her request for production. [DE 13 at 57]. In response, State Farm did not provide the email in question between State Farm and Orange but did provide "emails generated prior to suit between Orange and State Farm as part of State Farm's document production." [DE 15 at 95]. In other words, although the discovery request would have clearly

9

covered this communication, State Farm did not provide the email found in the State Court filing because it did not investigate whether it possessed responsive documents generated after the lawsuit was filed.

Generally, Fed. R. Civ. P. 26(e)(2) provides that a party must amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. In this case, State Farm failed to do this. Therefore, the fifth factor favors allowing Hahn to file after the deadline.

*6. Prejudice to State Farm.*

Next, the Court evaluates the prejudice to the nonmoving party. State Farm also argues that amendment of the current pleading and change of the scheduling order will significantly result in prejudice to State Farm. [DE 15 at 94].

Here, allowing Hahn to amend her pleading would prejudice State Farm because it "will essentially require the parties to start from scratch. New disclosures will be required, additional written discovery and numerous unforeseen depositions will be necessary to address the new claims." [*Id.* at 95–96]. However, as discussed above, the relevant email was in State Farm's possession when State Farm responded to Hahn's document requests on November 7, 2024. State Farm's failure to reasonably investigate whether it possessed "correspondence with any third-party regarding or related to Plaintiff's claim"—in this case, emails between the two State Farm employees assigned to Hahn's case and Orange, the contractor Hahn alleges State Farm failed to pay—prevented Hahn from finding this email until February 27, 2025. [DE 13 at 57]. Courts routinely reject similar arguments that delays are prejudicial when the party opposing amendment

10

is the source of the delay. *See, e.g., Vella v. Adell Broad. Corp.*, No. 13-CV-10061, 2014 WL 12923402, at *2 (E.D. Mich. Nov. 7, 2014) ("It was *defendant* that . . . caused delay by waiting until the close of discovery to reveal the information plaintiff sought – the very information that forms the basis for the proposed amended complaint. Defendant cannot argue that it will be prejudiced by an amendment that was delayed due to its own actions."). Accordingly, Hahn has good cause to amend the scheduling order.

      ii.     <u>Amending the Original Complaint</u>

Having addressed the factors of delay and prejudice and concluding neither warrant denying leave to amend and supplement, the Court considers next whether the Motion to Amend is otherwise proper under Rule 15.

If a party seeks to amend outside the twenty-one-day period provided by Fed. R. Civ. P. 15(a)(1)(A)–(B), Rule 15(a)(2) provides that "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether the interests of justice support a grant of leave to amend, courts consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)). "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)).

In its briefing, State Farm does not address the Rule 15 factors. For the purposes of this analysis, the Court assumes that State Farm raises the same arguments it did with respect to the issue of "good cause" under Rule 16. For the reasons above, State Farm's arguments do not demonstrate undue delay in filing, lack of notice to State Farm, bad faith by Hahn, or undue prejudice to State Farm.

State Farm suggests in passing that any amendment to add O'Loughlin and Savage would be futile. [*See* DE 15 at 92 ("No attempt was made to include State Farm claim representatives as a defendant presumably because claims against such individuals for bad faith is precluded under Kentucky law. *Breedlove v. State Farm Fire and Casualty Company*, 690 S.W.3d 904 (Ky. App. 2024)."]. Any reliance on *Breedlove* would be misplaced, however, because that case involved bad-faith claims, not tortious interference claims. There, the court held that "[b]ecause [the adjuster] was under no contractual obligation to pay [the insured], no action for bad faith may lie against him." *Id.* at 916. Unlike the plaintiff in *Breedlove,* Hahn does not allege that O'Loughlin or Savage owed a duty of good faith under the insurance policy or that there was any "contractual relationship" between them and Hahn. *Id*. (observing "it is unquestioned that Breedlove was in a contractual relationship with State Farm and not [the claims adjuster]" and therefore "no action for bad faith may lie against him"). Rather, Hahn's claims against O'Loughlin and Savage are based on their alleged tortious interference with the contracts between Hahn and Orange, and between Hahn and State Farm.

At this stage, then, it appears that Hahn's Motion to Amend is not futile. As this is Hahn's first request to amend the Original Complaint, the Court finds that granting Hahn's Motion to Amend is in the interest of justice. But this does not end the Court's inquiry because Hahn's Amended Complaint seeks to add new parties.

12

      iii.    Joinder

"[A] motion to amend under Rule 15(a) in which the moving party seeks to join a new party should be denied unless the moving party also satisfies 'the more specific permissive joinder provisions' of Rule 20[]." *Hammond-Beville v. Landis*, No. 3:20-CV-00973, 2022 WL 16950277, at *3 (M.D. Tenn. Nov. 15, 2022). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

In this case, the Court must "first consider whether joinder would be appropriate under [Fed. R. Civ. P.] 20 and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 922 (S.D.N.Y. 1995). Fed. R. Civ. P 20 allows permissive joinder of defendants in a single action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "The general impetus for applying § 1447(e) is for the trial court to use its discretion and determine if allowing joinder would be fair and equitable." *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F. Supp. 2d 807, 823 (N.D. Ohio 2008) (citations omitted). This determination is made "on a case-by-case basis" and takes "into account such considerations as efficiency, convenience, consistency, and fundamental fairness." *Dejesus v. Humana Ins. Co.*, 3:15-CV-862-GNS, 2016 WL 3630258, at *6 (W.D. Ky. June 29, 2016) (citation omitted).

In this case, State Farm does not argue that joinder fails the requirements of Rule 20. Nor could it. For one, joinder is appropriate under Fed. R. Civ. P. 20 because Hahn's claims against Savage and O'Loughlin arise out of the same series of transactions or occurrences stemming from

13

the failure to pay Hahn for loss of house. *See* Fed. R. Civ. P. 20(a)(2). Likewise, there is a least one mixed question of law and fact common to all defendants, i.e., whether State Farm was obligated to pay for Orange's repair services. *See id.* [*See also* DE 13-1 at 69 (alleging O'Loughlin and Savage "ensur[ed] that Hahn would fail to pay Orange by refusing to pay Hahn" *without justification*) (emphasis added)].

Finally, for the foregoing reasons, joining Savage and O'Loughlin would not be unfair to State Farm. And considerations of efficiency, convenience, and consistency all weigh in favor of joinder because Hahn's claims all arise from the same series of occurrences. The Court therefore declines to deny joinder under 28 U.S.C. § 1447(e), assuming for the sake of argument that the amendment could destroy diversity.[2] Accordingly, Hahn's Motion to Amend is **GRANTED** [DE 13]. Hahn's Amended Complaint [DE 13-1] shall operate as the controlling complaint in this matter.

    iv.    <u>Whether to Remand</u>

As the Supreme Court recently explained, "[i]n removed cases . . . amending a complaint to join a non-diverse party destroys diversity jurisdiction. So, if such a joinder occurs after removal, the federal court must remand the case to the state court it began in." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38 (2025) (citing 28 U.S.C. § 1447(e)); *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 231–232 (2007).

Here, the Amended Complaint adds Savage and O'Loughlin as defendants to this case. O'Loughlin appears to be a resident of Kentucky, the state where Hahn is domiciled. [DE 13-4; DE 13-1]. Thus, it appears that diversity has been destroyed. [*See also* DE 27 ("Ms. Hahn recognizes, however, that Joinder would destroy complete diversity jurisdiction and this Court

---

[2] As explained below, the record is not sufficiently developed at this time for the Court to make that determination.

14

would lose jurisdiction."]. Under the circumstances, remand to the Jefferson County Circuit Court is likely appropriate. Nevertheless, this issue has not been directly addressed by either Party. Therefore, as the Court ordered with respect to the amount-in-controversy requirement [*see* DE 25], the Parties shall have seven (7) days from the entry of this Order to file a brief memorandum in support of diversity jurisdiction. If the Court determines that the parties are not diverse as of this Order, the time of filing the operative pleading, this action will be remanded to Jefferson County Circuit Court.

### III.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Hahn's Motion to Amend [DE 13] is **GRANTED**.

(2) The Parties shall file supplemental memoranda addressing this Court's subject matter jurisdiction, as discussed herein, no later than seven (7) days from the entry of this Order.

*Rebecca Grady Jennings, District Judge*
United States District Court

October 28, 2025